UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FALLS LAKE NATIONAL INSURANCE           CIV:
COMPANY,

                                                           Plaintiff,        **COMPLAINT**
          -against-

BEST INTERIOR SOLUTIONS INC., ARTHUR J.
BURKE, 301 EAST 81ST PH 20 INC., PROFESSIONAL
INTERIOR CONTRACTING, INC., SHWETA RAWAT,
MONEESHA SANI, BRODERICK STONE, PURE
INSURANCE COMPANY, GREATER NY INSURANCE
COMPANY, STUDIO SOFIELD, INC., ICON REALTY
MANAGEMENT LLC, 301 EAST 80TH REALTY LLC and
1562/1564 SECOND REALTY LLC,

                                                           Defendants,
------------------------------------------------------------------X

Plaintiff, Falls Lake National Insurance Company ("FLNIC" or "Plaintiff") by and through its attorneys, Miranda Slone Sklarin Verveniotis LLP, complaining of the defendants, alleges, upon information and belief, as follows:

## THE PARTIES

1. At all relevant times, the plaintiff, Falls Lake National Insurance Company ("Falls Lake"), was, and still is, a citizen of the State of Ohio and North Carolina in that it is a corporation duly organized and existing under and by virtue of the laws of the State of Ohio with its principal place of business located at 6131 Falls of Neuse Road, Suite 306, Raleigh, North Carolina 27609.

2. At all relevant times, the defendant BEST INTERIOR SOLUTIONS INC. ("Best Interior"), was, and still is, a citizen of the State of New York in that it is a corporation organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 30-16 Brighton 3rd Street, Brooklyn, NY 11235.

1

3. At all relevant times, the defendant ARTHUR J. BURKE ("Burke") was, and still is, a citizen of New York, and a resident of New York County, residing at 301 E. 81st Street, Penthouse # 18, New York, NY 10028.

4. At all relevant times, the defendant 301 EAST 81ST PH 20 INC. ("301 East 81st"), was, and still is, a citizen of the State of New York in that it is a corporation organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 301 E. 81st Street, Penthouse # 20, New York, NY 10028.

5. At all relevant times, the defendant PROFESSIONAL INTERIOR CONTRACTING, INC. ("Professional Interior"), was, and still is, a citizen of the State of New York in that it is a corporation organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 34-24 Hunters Point Avenue, Long Island City, NY 11101.

6. At all relevant times, the defendant SHWETA RAWAT ("Rawat") was, and still is, a citizen of New York, and a resident of New York County, residing at 301 E. 81st Street, Penthouse # 20, New York, NY 10028.

7. At all relevant times, the defendant MONEESHA SANI ("SANI") was, and still is, a citizen of New York, and a resident of New York County, residing at 301 E. 81st Street, Penthouse # 19, New York, NY 10028.

8. At all relevant times, the defendant BRODERICK STONE ("Stone") was, and still is, a citizen of New York, and a resident of New York County, residing at 301 E. 81st Street, Penthouse # 17, New York, NY 10028.

9. At all relevant times, the defendant PURE INSURANCE ("Pure"), was, and still is, a citizen of the State of Florida in that it is a corporation duly organized and existing under and by

virtue of the laws of the State of Florida with its principal place of business located at 800 Corporate Drive, Suite 420, Ft. Lauderdale, FL 33334.

10. At all relevant times, the defendant GREATER NY INSURANCE COMPANY ("Greater"), was, and still is, a citizen of the State of New York in that it is a corporation duly organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 200 Madison Avenue, New York, NY 10016.

11. At all relevant times, the defendant STUDIO SOFIELD, INC. ("Studio Sofield"), was, and still is, a citizen of the State of New York in that it is a corporation organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 65 Bleecker Street, Floor 13, New York, NY 10012.

12. At all relevant times, the defendant ICON REALTY MANAGEMENT LLC ("Icon"), was and still is a citizen of New York because its members, Terrence Lowenberg and Todd Cohen, are citizens of New York. Based upon our investigation, it was discovered that Terrence Lowenberg and Todd Cohen are the sole members of Icon. At all relevant times, Terrence Lowenberg was and still is a citizen of New York residing at 795 Flying Point Road, Water Mill, NY 11976. At all relevant times, Todd Cohen was and still is a citizen of New York residing at 278 West 4th Street, New York, NY 10014.

13. At all relevant times, the defendant 301 EAST 80TH REALTY LLC ("301 East"), was and still is a citizen of New York because its members, David Zade, Shirin Zade, and Terrence Lowenberg, are citizens of New York. Based upon our investigation, it was discovered that David Zade, Shirin Zade, and Terrence Lowenberg are the sole members of 301 East. At all relevant times, David and Shirid Zade were and still are citizens of New York residing at 243 Waverly

3

Ave., Brooklyn, NY 11205. At all relevant times, Terrence Lowenberg was and still is a citizen of New York residing at 795 Flying Point Road, Water Mill, NY 11976.

14. At all relevant times, the defendant 1562/1564 SECOND REALTY LLC ("1562/1564"), was and still is a citizen of New York because its member, Terrence Lowenberg, is a citizen of New York. Based upon our investigation, it was discovered that Terrence Lowenberg is the sole members of 1562/1564. At all relevant times, Terrence Lowenberg was and still is a citizen of New York residing at 795 Flying Point Road, Water Mill, NY 11976.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction due to diversity of citizenship and amounts in controversy in excess of $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. Section 1332.

16. An actual judiciable controversy exists between the parties as to coverage under an insurance policy issued by Falls Lake to Best Interior for the claims asserted or recovery sought as to the underlying lawsuit entitled <u>Arthur J. Burke v. 301 East 81st PH 20 Inc., Professional Interior Contracting, Inc. and Best Interior Solutions, Inc.</u>, which is pending in the Supreme Court of the State of New York, County of New York, under Index Number 154914/2022 (the "Burke Action") – a copy of the complaint in the Burke Action is attached hereto as Exhibit A – as to which Falls Lake denied coverage and is not affording a defense to Best Interior. In addition, a judiciable controversy exists for the property damage alleged at Units 17, 19, and 20 and the common areas located at 301 E. 81st Street, New York, NY 10028 (hereinafter referred to as "Beckford House") due to the work of Best Interior at Unit 20 (all claims including the claims asserted in the Burke Action are hereinafter referred to as the "Beckford Claims"). This action

4

seeks a declaration as to the denial of coverage and the rights and obligation of the plaintiff under the policy of insurance issued to Best Interior as to the Beckford Claims.

17. An actual justiciable controversy exists between the parties as to the coverage afforded under the insurance policy issued by Falls Lake to Best Interior, as applicable to the claims asserted or recovery sought in the Beckford Claims.

18. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 in that several of the defendants reside in this district, the Burke Action is pending in the district, and the property damage at issue in the Beckford Claims occurred in the district.

19. Plaintiff seeks a declaration as to a disclaimer of coverage under a policy of insurance as to the claims in the Beckford Claims, and plaintiff has no adequate remedy at law.

## THE UNDERLYING ACTIONS

20. The Beckford Claims assert claims of property damage due to Best Interior's work at Unit 20 located inside Beckford House, a newly constructed 21 story condominium containing 32 two to five-bedroom homes, along with three full-floor penthouses and one duplex. It is alleged that there was property damage sustained on January 5, 2022 to units 17, 18, 19, and 20 as well as to common areas of Beckford House due to Best Interior's work at unit 20.

21. The defendants in this action are parties to the Burke Action and/or have asserted or have claims and rights relevant to the claims in the Beckford Claims under the policy of insurance issued to Best Interior's as to which coverage has been denied by Falls Lake.

## REQUEST FOR DECLARATORY JUDGMENT UPHOLDING DISCLAIMER

22. The Plaintiff repeats and re-alleges each and every allegation contained in this complaint number 1 through 20, as if fully set forth at length herein.

23. Falls Lake issued a policy of insurance numbered SKP 2003601 13 to Ka for the policy period of August 24, 2021 to August 24, 2022 (the "Policy").

24. The Policy contains the following coverage provisions stated on form **CG 01 63 07 11**:

\* \* \*

**NEW YORK CHANGES –**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph **1. Insuring Agreement** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>
> **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.
>
> **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
>
> > (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
> >
> > (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
> >
> > (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.
>
> **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".
>
> \* \* \*

25. Form **AE0152 0816** of the Policy provides, in relevant part, as follows:

**NEW RESIDENTIAL CONSTRUCTION LIMITATION**

7

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

COMMERCIAL UMBRELLA COVERAGE LIABILITY FORM

The following limitation of coverage is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2., EXCLUSIONS** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**I.** This insurance does not apply to "Bodily injury", "Property damage", "Personal and advertising injury", or any other injury, loss or damage in any way connected with or arising out of "new residential construction" including any of the following units of construction:

    **A.** "Condominiums" or "cooperatives";

    **B.** "Town houses"; or

    **C.** "Single family houses"

Whether such "new residential construction" is or was performed by:

    **A.** An "Insured";
    **B.** A person or entity to whom an "Insured" owes a contractual obligation of indemnification; or
    **C.** A person or entity added as an "Additional Insured," under this policy.
    **D.** A subcontractor or contractor working for or at the direction of any insured.

This limitation does not apply to "new residential construction" if the total number of "condominiums", "cooperatives", "town houses", or "single family houses", in the project or development does not exceed (20) individual units.

This limitation also does not apply to remodeling, repair or maintenance operations performed on any individual "condominium", "cooperative", "town house", or "single family house", previously occupied or put to its intended use.

**II.** For purposes of this endorsement, the following are added to **Section V – DEFINITIONS:** of the Policy:

    **A.** "Condominium" means an undivided interest in common property within a multi-unit residential real property coupled with a separate

8

      interest in space comprising a unit. "Condominium" shall include any individual unit, any model homes, any common areas and all appurtenant structures thereto.

  **B.** "Cooperative" means a building with units owned by a corporation of tenants in which shares of expenses are calculated on the basis of the value of the tenant's unit. "Cooperative" includes both the unit itself and any common areas of the building and all appurtenant structures thereto.

  **C.** "Town house" means a "condominium," "cooperative" or "single family house" built in a row with other residential homes of the same or similar design with either a wall in common with another unit or a narrow space between units, together with any common areas, model homes and appurtenant structures thereto. "Town house" includes row houses or row homes.

  **D.** "Single family house" means a separate, free-standing house designed to be occupied by one family and any appurtenant structures thereto.

  **E.** "New residential construction" means operations relating to construction of a building, multiple buildings, building unit or multiple building units, not previously occupied or put to its intended use, designed for occupancy in whole or in part as a residence by a person, and shall include the land upon which such building(s) or building unit(s) is/are situated and any appurtenant structures thereto.

\*    \*    \*

26.    Form **CG 00 01 04 13** of the Policy provides, in relevant part, as follows:

**2. Exclusions**
This insurance does not apply to:

\*    \*    \*

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    (1) That the insured would have in the absence of the contract or agreement; or

    (2) Assumed in a contract or agreement that is an 'insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable

9

attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(1) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(2) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**j. Damage to Property**

Property damage to:

\* \* \*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operation hazard".

\* \* \*

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

\* \* \*

**l. Damage to Your Work**

10

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

**n. Recall of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";
**(2)** "Your work"; or
**(3)** "Impaired property";
If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition on it.

\* \* \*

27.     Form **CG 22 34 04 13** also states the following:

**EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS**

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2. Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change order or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the personal and advertising injury", involved that which is described in Paragraph **1.** or **2.**

\* \* \*

28. Also, form **CG 22 79 04 13** of the Policy states the following:

    **EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY**

    This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

    The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

    1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of

or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

    **a.**    Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

    **b.**    Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

  **2.**  Subject to Paragraph **3.** below, professional services include:

    **a.**    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    **b.**    Supervisory or inspection activities performed as part of any related architectural or engineering activities.

  **3.**  Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

*   *   *

29.    Form **CG 22 94 10 01** of the Policy states the following:

*   *   *

**EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **l. of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

\* \* \*

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

\* \* \*

30. Furthermore, form **CG 20 33 04 13** reads as follows:

\* \* \*

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and

2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

\*   \*   \*

31. Moreover, Policy form **AE 01 49 11 15** states:

\*   \*   \*

**ADDITIONAL INSURED – OWNERS, LESSEES, OR CONTRACTORS – COMPLETED OPERATIONS – AUTOMATIC STATUS WHEN REQUIRED IN A WRITTEN CONTRACT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Section II – Who is An Insured** is amended to include as an additional insured any person or organization when you and such person or organization have agreed in a "written contract" that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by "your work" performed for that additional insured and included in the "products-completed operations hazard".

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and

2. Will not be broader than that which you are required by the "written contract" to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured, if

the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

C. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance.

1. Required by the "written contract" you have entered into with the additional insured; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

D. The following is added to **4. Other Insurance**, part of **SECTION IV – COMMERICAL GENERAL LIABILITY CONDITIONS:**

If the "written contract" specifically requires that this insurance apply on a primary basis or a primary and non-contributory basis, this insurance is primary to such additional insured.

E. As respects this endorsement only, The following Definition is added to **SECTION V – DEFINITIONS**

A "written contract" means that part of any written contract under which you are required to include a person or organizations as an additional insured, provided that the "bodily injury", "property damage", or "personal and advertising injury" occurs:

1. After the signing and execution of the written contract by you;

2. While that part of the written contract is in effect; and

3. Before the end of the policy period.

* * *

32. Policy form **CG 00 01 04 13** states:

\* \* \*

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

    **2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

        **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

        **b.** This insurance applies to such liability assumed by the insured;

        **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

        **d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

        **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

        **f.** The indemnitee:

            **(1)** Agrees in writing to:

                **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

                **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

                **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

                **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

            **(2)** Provides us with written authorization to:

                **(a)** Obtain records and other information related to the "suit"; and

                **(b)** Conduct and control the defense of the indemnitee in such "suit".

> So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.
>
> Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

*   *   *

33. The exclusions, endorsements, and provisions of the Policy noted above apply to bar coverage for all of the claims asserted or which may be asserted in the Beckford Claims and apply as to the claims by and against all parties.

34. Each of these above-quoted provisions also bar coverage under the Policy for such claims asserted or which may be asserted in the Beckford Claims.

35. Falls Lake has timely and properly disclaimed coverage under the Policy to all parties in the Beckford Claims as to the claims asserted.

36. Falls Lake seeks declaratory relief from this Court as to defense and indemnity of any and all claims asserted or which may be asserted in the Beckford Claims.

37. By reason of the foregoing, Falls Lake is entitled to a declaration that it has no obligation for defense or indemnity as to any party regarding the claims asserted or which may be asserted in the Beckford Claims.

**WHEREFORE**, Falls Lake National Insurance Company demands judgment declaring that it has no duty to defend or indemnify any party or pay any judgment or settlement as to the claims asserted or which may be asserted by or against any party in the Beckford Claims, together

with the costs, disbursement and attorneys' fees for this action, and such other relief as the Court may deem just, proper and equitable.

Dated:   Mineola, New York
         November 1, 2022

                                        **MIRANDA SLONE**
                                        **SKLARIN VERVENIOTIS**
                                        *Attorneys for Plaintiff*
                                        FALLS LAKE NATIONAL
                                        INSURANCE COMPANY

                                By: _____
                                        Steven Verveniotis
                                        240 Mineola Boulevard
                                        The Esposito Building
                                        Mineola, New York 11501
                                        (516) 741-7676
                                        Oure File: 22-042